UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

Tyvone Freeman, #1155841,

    Petitioner,

v.                          CIVIL ACTION NO. 2:17cv76

Harold Clarke,
*Director, Virginia Department of
Corrections*,

    Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Tyvone Freeman seeks a writ of habeas corpus alleging constitutional errors underlying his state convictions for robbery, attempted robbery, abduction for pecuniary benefit and related use of a firearm charges. The Respondent moved to dismiss Freeman's petition, and the matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. Freeman's claim of prosecutorial misconduct is procedurally defaulted, and Freeman has failed to show cause and prejudice to excuse the default. However, Freeman also claims he was denied effective assistance of counsel during his sentencing hearing and on appeal, when his attorney incorrectly advised the court that it was required to run all of his mandatory gun sentences consecutively. As set forth in the recommendation below, this report concludes that the state

court's denial of Freeman's ineffectiveness claims is premised upon an unreasonable factual finding that counsel's error was "strategic." This resulted in an application of <u>Strickland</u> which cannot be sustained on the record before the state habeas court. Accordingly, this report recommends the Respondent's motion to dismiss be GRANTED IN PART and DENIED IN PART and that the court GRANT Freeman's request for counsel (ECF No. 3), and following appointment, direct the parties to confer regarding the need for, and availability of an evidentiary hearing to finally resolve Freeman's ineffectiveness claims.

## I.   STATEMENT OF THE CASE

Freeman is incarcerated at the River North Correctional Facility in Independence, Virginia. He is serving an active 38-year prison term pursuant to final judgment orders following his criminal conviction in the Circuit Court of the City of Richmond, entered on February 15, 2013, for crimes he committed on July 26, 2012.

On that day, Freeman entered the offices of the Peter Paul Development Center[1] with a pistol in hand and told the three people in the reception area, Anthony Christian, Danyelle Barnes, and Eddie Ross, "I want everyone's wallet." <u>Freeman v.</u>

---

[1] The Peter Paul Development Center is "an outreach and community center serving Church Hill and neighboring communities in Richmond's East End. Founded in 1979, it is the oldest community-based agency continually serving Church Hill children and families." <u>About Us</u>, Peter Paul Development Center, https://www.peterpauldevcenter.org/about-us/ (last visited Oct. 18, 2017).

Commonwealth, No. 0818-13-2, slip op. at 1 (Va. Ct. App. Apr 29, 2014) (per curiam). When these first three people he encountered told him they had no money, Freeman moved farther into the office, encountering Ingrid Deroo and Damon Jiggetts. He pointed the gun at each of them ordering them to return with him back into the reception area. Id. at 1-2. Shortly thereafter, a sixth person, Jonathan Armstrong, walked down the hall and on confronting Freeman was also ordered to remain in the reception area. There, Freeman told the six victims, "If somebody don't give me any money, somebody is going to get hurt." Id. at 2. Ross was the only victim to give Freeman any money: eight dollars and "some change." Id. at 3. When Ross went to hand the money to Freeman, some of it fell to the floor. Id. Freeman picked up the dropped money and ran from the office. Id.

Originally Freeman was charged with 28 felonies. At trial without a jury, the Richmond Circuit Court convicted Freeman of 16 felonies, including two counts of abduction for pecuniary benefit for forcing Deroo and Jiggetts — but not Armstrong — into the reception area. He was also convicted on one count of robbery for taking the money from Ross and five counts of attempted robbery of the five other victims. Additionally, he was convicted on eight separate charges of using a firearm in

the commission of the eight underlying felony offenses.
Resp't's Br. at pp. 1-2 (ECF No. 13).

At sentencing the prosecutor tendered a sentencing
worksheet with the guideline range computed based on Freeman's
robbery convictions.   Absent a reason for a varying sentence,
Virginia courts generally apply the sentencing guidelines for
the most serious offense of which the defendant was convicted.[2]
Va. Sentencing Guidelines Manual, "Introduction," at 5 (15th ed.
2012).   In this case, the guideline range for Freeman's offenses
calculated using the robbery sentencing worksheet was 18 years,
2 months, to 28 years, 6 months. Sentencing Guidelines Worksheet
(Apr. 8, 2013).   The prosecutor had also calculated the range
using the abduction offense which she described during
sentencing as 13 years, 9 months, to 33 years, 1 month.   Trial
Tr. at 155-56.

Both attorneys represented to the court that they agreed to
use the robbery guidelines for the sentencing worksheet, because
the mandatory sentences for Freeman's eight firearms charges
required the court to impose a 38-year sentence.[3]   As a result,
both counsel stated that the minimum total mandatory sentence on
the firearms charges would exceed the highest end of the

---

[2] The rules for determining which offense is "most serious," and therefore
which sentencing worksheet to use, are detailed in the Guidelines Manual.
"General Instructions," at 5-7.
[3] Under Virginia Code § 18.2-53.1 the mandatory sentence for using a firearm
during a robbery is three years for a first offense and five years for a
second or subsequent offense.

guideline range when calculated using either the robbery or abduction worksheets. Trial Tr. at 155-56. Consequently, neither counsel evaluated for the court which guidelines range to use (abduction or robbery), apparently believing it made no difference. The prosecutor handed up the worksheet without marking the box for a mandatory minimum. When asked by the trial judge if the worksheet reflected the mandatory time, she indicated, "I didn't check the box. I could do that, but then all the boxes would say 38 years and I didn't know if that would be helpful to you to have all 38 years." Trial Tr. at 156. The court inquired of Freeman's counsel, "Do you agree?" and he responded, "It's 38 years." The court then checked the box and wrote below "38 yrs." Id.; Sentencing Guidelines Worksheet (April 8, 2013). Although both counsel correctly calculated the mandatory sentences if all eight were run consecutively, however, a recent decision by the Supreme Court of Virginia confirmed that the mandatory gun sentences could be run concurrently with each other and thus, the court had discretion to impose less than a 38-year sentence. Brown v. Commonwealth, 733 S.E.2d 638, 640 (Va. 2012).

In his argument on sentencing, Freeman's counsel stated that he had advised his client of the mandatory sentences "and that this court is bound by law and by statute to impose that." He acknowledged that "there's been some tinkering with that and

whether you can run any of that concurrent, but you can't run it concurrent with the underlying charge." He concluded, stating, "I don't know how you would structure a sentence of that nature [presumably less than 38 years], and I don't think the law allows you to. So I believe we are stuck at 38 years." Trial Tr. at 157. He then asked the court to "temper its justice with mercy, even though your hands are tied to the extent of the 38-year sentence. I would ask you not to impose anything more than that." Trial Tr. at 159. He urged the court to suspend all the time on the remaining underlying offenses "because 38 years is well above the guidelines." He also noted his client would be "well into his 60s" before he's eligible to be released. He noted that two of the witnesses stated that Freeman apologized for his actions as he left the scene of the robbery, and two others described him as flustered and "distressed." Trial Tr. at 159.

The prosecutor then argued that Freeman's victims suffered a loss much more significant than the stolen funds. She stated they were traumatized by Freeman's actions and observed that Freeman had a long record. She asked the court to consider all of that – but did not request any specific sentence. Trial Tr. at 161.

For the charges of robbery, attempted robbery, and abduction, the Richmond Circuit Court imposed a total sentence

of 110 years in prison, though it suspended that entire sentence. For the eight firearms convictions, the court imposed an active sentence of thirty-eight years of imprisonment, three years for the first offense, and five for each additional offense, all running consecutively. Sentencing Orders (Ex. 1 to ECF No. 13). After pronouncing the sentence, the court observed "I'm going to go with the mandatory minimum on this. This is more than we do in murder cases, so I think it's a sufficient punishment for what happened this day." Trial Tr. at 164.

On direct appeal, Freeman challenged the trial court's finding that Freeman's actions were sufficient to support both robbery and abduction charges, arguing that his detention of the victims was integral to the robbery and thus could not be used to support the abduction charges. The Virginia Court of Appeals affirmed Freeman's conviction. Freeman, slip op. at 1. He filed a petition for appeal in the Supreme Court of Virginia, which that court denied. Resp't's Br. at 2 (ECF No. 13).

On June 25, 2015, Freeman timely sought a writ of habeas corpus in the Richmond Circuit Court. Freeman asserted the following claims:[4]

> (1) The trial court erred in imposing a sentence of 38 years for his multiple convictions for the use of a firearm in a felony, arguing that he had not

---

[4] The court adopts the Richmond Circuit Court's numbering of the state claims, but notes that it does not correspond precisely with the claims as outlined in Freeman's state petition. Order at 2-3 (Ex. 2 to ECF No. 13).

7

previously been convicted of this offense prior to his trial.

(2) Counsel rendered ineffective assistance in failing to object to the trial court's sentence for his offenses alleging the use of a firearm in the commission of a felony.

(3) The prosecution acted vindictively in bringing against him a voluminous number of charges, alleging that it did so only because he was "trying to do the Central State thing."[5]

(4) Counsel rendered ineffective assistance in failing to object to the filing of separate indictments for the use of a firearm related to the abduction and attempted robbery of both victims Jiggetts and Deroo. Freeman argues that the abduction and robbery of each victim was part of "one common scheme or plan," and should thus not have supported separate counts for the use of a firearm in their commission.

(5) Counsel rendered ineffective assistance in failing to seek the running of the sentences imposed for the use of a firearm in commission of a felony as concurrent to one another.

(6) Counsel rendered ineffective assistance in failing to object to the indictments alleging the use of a firearm in the commission of the attempted robberies and the completed robbery. Freeman argues these acts occurred together and should therefore have been treated as a one offense.

(7) Counsel failed to consult with him regarding appealing the sentence imposed.

State Pet. at 4-15.

On December 4, 2015, without taking evidence, the Richmond Circuit Court denied and dismissed Freeman's habeas petition.

---

[5] The "Central State thing" seems to refer to Freeman's mental health evaluation at Central State Hospital in Petersburg, Virginia. Freeman appears to believe the prosecutors in his case had some animus against him because he sought mental health evaluation and treatment. See Pet. at 5-6 (ECF No. 1); see also Torres Letter (Oct. 17, 2012), p. vi to State Pet.

As relevant here, the state habeas court dismissed Freeman's claim of prosecutorial vindictiveness (Federal Claim 1), finding the claim should have been raised at trial or on direct appeal. Freeman v. Clark, No. CL15-3081-2, Final Order at 3-4 (, Ex. 2 to ECF No. 13) (citing Slayton v. Parrigan, 215 Va. 27, 30 (1974)). The court also denied Freeman's claims of ineffectiveness (Federal Claims 2 and 3), concluding that Freeman's attorney made a strategic choice not to seek concurrent sentences on the eight firearms charges and request suspension of the remaining sentences. Id. at 11-13.[6] Order (Ex. 2 to ECF No. 13).

Freeman appealed the trial court's denial to the Supreme Court of Virginia. Pet. for Appeal (Ex. 3 to ECF No. 13). In his petition, Freeman "assigned . . . issues to be raised on appeal" that he numbered 1 through 7. The Supreme Court construed these "issues" as assignments of error. They overlapped, but did not correspond exactly with Freeman's claims in Circuit Court. Freeman also identified two additional assignments of error which he numbered 52 and 53. Assignment of Error 52 argued the Richmond Circuit Court failed to give

_____

[6] The Richmond Circuit Court seems to have addressed only one facet of Freeman's claim 7. The court addresses the attorney's failure to advise Freeman to make a clearly losing argument on appeal, dismissing the claim as a basis for habeas relief. Order at 13-14 (Ex. 2 to ECF No. 13). The court did not address Freeman's complaint that his attorney failed to advise him to make the argument on appeal that the sentencing judge erred by believing that the sentences on all eight gun charges had to run consecutively. Compare id. with State Pet. at 14.

sufficient explanation for denying his state habeas corpus petition to allow him to respond to the denial. Assignment of Error 53 alleged he "was not required to seek and exhaust administrative remedies prior to filing his claims with the district court." Id. at 5.

On December 12, 2016, the Supreme Court of Virginia dismissed Freeman's appeal as to Assignments of Error 4 through 7, and 53 of his petition, finding that Freeman failed to comply with a Virginia Supreme Court Rule requiring assignments of error to identify error in the ruling of the court from which the appeal is taken. Va. Sup. Ct. R. 5:17(c)(1)(iii). In the same order, the Supreme Court of Virginia refused the appeal as it related to petitioner's Assignments of Error 1 through 3, and 52. Va. Sup. Ct. Order (Ex. 4 to ECF No. 13).

On February 7, 2017, Freeman timely filed his federal petition for a writ of habeas corpus in this court.[7] Freeman's federal petition raises one due process claim and two claims related to the ineffectiveness of trial counsel. Specifically, he argues:

> (1) A deprivation of due process, premised upon a claim of prosecutorial vindictiveness (State Claim 3) (Assignment of Error 4);

> (2) Ineffective assistance of counsel based upon his counsel's error regarding the mandatory calculation of

---

[7] Respondent acknowledges Freeman's Petition was timely filed. See Resp't's Br. at 4-6 (ECF No. 13).

sentence for petitioner's eight firearm violations (State Claims 2 and 5) (Assignment of Error 2);

(3) Ineffective assistance of counsel based counsel's alleged failure to consult with the petitioner concerning the advisability of appealing the sentence imposed by the trial court (State Claim 7) (Assignment of Error 2).

Pet. at 2-4 (ECF No. 1).

The court has jurisdiction under 28 U.S.C. § 2254, and venue is proper in this court because Freeman's conviction occurred in the Eastern District of Virginia. See 28 U.S.C. §§ 127, 2241(d). Respondent filed a motion to dismiss, along with the required notice under Roseboro v. Garrison, 528 F. 2d 329, 329-30 (4th Cir. 1975). Freeman initially advised the court that he would not respond to the motion. Pet.'s Waiver (ECF No. 15). Later, the court ordered supplemental briefing on the ineffectiveness claims related to the alleged sentencing error. Both parties filed supplemental briefs. Resp't's Supp. Br. (ECF No. 17); Pet.'s Supp. Br. (ECF No. 20). The motion to dismiss is therefore now ripe for judicial review.

1. **Exhaustion and Procedural Default.**

Petitions for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before applying for federal habeas relief, however, a petitioner must

first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can apply for federal habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in the state proceeding. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.1998). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.1997); see Picard v. Connor, 404 U.S. 270, 275–76 (1971).

Here, Freeman included all three of his federal claims in his original state circuit court petition which was decided on the merits. He then appealed to the Supreme Court of Virginia, which dismissed some of his assignments of error on procedural grounds and refused others. Thus, it appears all of Freeman's federal claims are exhausted.

**2. Freeman's claim of prosecutorial vindictiveness is procedurally defaulted and barred from federal review.**

Freeman's federal claim 1 corresponds to his state claim 3, which was addressed by assignment of error 4 in his habeas appeal. The Supreme Court dismissed this assignment of error for failing to specify any specific error in the Circuit Court ruling. See Va. Sup. Ct. Rule 5:17(c)(1)(iii); Va. Sup. Ct.

Order (Ex. 4 to ECF No. 13). The Circuit Court had also denied Claim 3 on the procedural ground that Freeman had not pursued the matter at trial or on direct appeal. <u>Slayton</u>, 215 Va. at 30. When a petitioner fails to comply with a state procedural rule, and that failure provides an adequate and independent ground for a state's denial of relief, federal review is barred if the state court expressly relied on the procedural default, absent a showing by the petitioner of either cause and prejudice or a fundamental miscarriage of justice. <u>See Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991). "[F]ederal courts will not consider on collateral review of state court criminal convictions a federal claim which the state courts have finally dismissed on an 'independent and adequate' state ground, which includes procedural defaults under state law." <u>Skipper v. French</u>, 130 F.3d 603, 609 (4th Cir. 1997). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and independent if it does not depend on a federal constitutional ruling. <u>Yeatts v. Angelone</u>, 166 F.3d 255, 263-64 (1998).

Because the Supreme Court of Virginia dismissed Freeman's appeal of the state habeas court's ruling as to his assignments of error in claims 4 through 7, and 53 without considering the claims' merits, the corresponding federal claims are procedurally defaulted. The procedurally defaulted claims

13

include the claim of prosecutorial vindictiveness, which he
raises in claim 1 of the instant petition.  Virginia's rule
requiring assignment of error is an independent and adequate
state law ground for dismissal that prevents federal review.
See Hedrick v. True, 443 F.3d 342, 360 (4th Cir. 2006); Mueller
v. Angelone, 181 F.3d 557, 584 (4th Cir. 1999) (finding that the
petitioner's procedural default under Rule 5:17(c) for failure
to brief issues that were designated as assignments of error was
an adequate state ground to bar federal review); Yeatts v.
Angelone, 166 F.3d 255, 264 (4th Cir. 1999) (holding that Rule
5:17(c) is a "firmly rooted" independent state rule that
precludes federal review).

A petitioner may overcome a procedural default, and have
his claims addressed on the merits, by demonstrating cause for
the default and prejudice resulting therefrom or that a failure
to consider the claims will result in a fundamental miscarriage
of justice.  McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007)
(citing Coleman, 501 U.S. at 750); see also Savino v. Murray, 82
F.3d 593, 602 (4th Cir. 1996) (same).  To establish cause, a
petitioner must "show that some objective factor external to the
defense impeded counsel's efforts to comply with the State's
procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).
This requires a demonstration that "the factual or legal basis
for the claim was not reasonably available to the claimant at

14

the time of the state proceeding." <u>Roach v. Angelone</u>, 176 F.3d 210, 222 (4th Cir. 1999); <u>Hedrick</u>, 443 F.3d at 366.

Freeman offers no evidence of cause and prejudice to excuse the procedural default of Claim 1. Nor has he argued that a fundamental miscarriage of justice will result in the event that this claim is not considered. Accordingly, Freeman's claimed deprivation of due process by prosecutorial vindictiveness is procedurally defaulted and barred from federal habeas review. <u>See</u> <u>Burket v. Angelone</u>, 208 F.3d 172, 184 (4th Cir. 2000). It should therefore be denied and dismissed.

**3. The state court's basis for resolving Claims 2 and 3 permits review of these claims on the merits in this federal petition.**

The Respondent has argued that Freeman's ineffectiveness claims are also procedurally defaulted. Resp't's Supp. Br. (ECF No. 17 at 5) (citing Sup. Ct. Order (Ex. 4 to ECF No. 13)) (noting the Supreme Court of Virginia's dismissal of state habeas Claim 5, the analog to federal Claim 2). It does not appear that they are.

The Supreme Court's Order rejecting Freeman's habeas appeal identifies items in Freeman's petition he called "issues to be raised on appeal." <u>Id.</u> (citing Pet. for Appeal at 5 (Ex. 3 to ECF No. 13)). The Supreme Court described these as "assignments of error." Sup. Ct. Order (Ex. 4 to ECF No. 13). It concluded Assignments of Error 4 through 7 and 53 were not properly

15

directed to the Circuit Court's opinion on the petition for habeas corpus and therefore dismissed them for failing to comply with Virginia Supreme Court Rule 5:17(c)(l)(iii).   Sup. Ct. Order (Ex. 4 to ECF No. 13).   The Supreme Court refused Freeman's appeal on the remaining items.   Id.   The Respondent asserts the dismissal of items 4 through 7 amounted to a procedural default of Freeman's ineffective assistance claims. Resp't's Supp. Br. at 5 (ECF No. 17).

The Respondent's claim of procedural default on these claims apparently arises from the conflicting numbering of Freeman's claims in his state habeas corpus petition and the assignments of error in his petition for appeal of that denial. In the Richmond Circuit Court's Order denying Freeman's petition for habeas corpus, Freeman's ineffective assistance claims are associated with items 2, 5 and 7 of the state court's opinion denying his petition for habeas corpus relief.   Order at 2-3 (Ex. 2 to ECF No. 13).   In Freeman's petition for an appeal of that denial, he associates his ineffective assistance arguments with, what the Supreme Court described as Assignment of Error 2, which Freeman described as "Ineffective assistance of counsel." Pet. for App. at 5 (Ext. 3 to ECF No. 13).   The Assignments of

Error numbered 5 and 7 are unrelated to Freeman's ineffectiveness claims.[8]

The Respondent seems to have understandably accepted the numbering of Freeman's first seven habeas claims with his seven assignments of error. But, Freeman's claims 5 and 7 in the state court order (Ext. 2 to ECF No. 13) are not the same as his Assignments of Error number 5 and 7 in his petition for an appeal (Ex. 3 to ECF No. 13). If they had been, then the Respondent would be correct that Freeman's ineffective assistance of counsel claims were dismissed by the Virginia Supreme Court for failure to comply with Supreme Court procedure. Va. Sup. Ct. R. 5:17(c)(1)(iii). That would have been an adequate and independent state court basis for procedural default, and this court would be precluded from reviewing Freeman's ineffective assistance claims. See Hedrick, 443 F.3d at 363. However, the Supreme Court of Virginia, instead, refused Freeman's appeal of the ineffective assistance of counsel claims rather than dismissing them for failure to comply with the Supreme Court Rules. As a result, those claims have been exhausted and are not procedurally defaulted, and this court can review them. See 18 U.S.C. § 2254(d).

---

[8] Assignment of Error 5 stated, "Violations of Due Process on behalf of Prosecution" and Assignment of Error 7 said simply, "Fairness of law." Pet. for App. at 5 (Ex. 3 to ECF No. 13).

**4.   Application of § 2254(d) standard of review to Claims 2 and 3.**

If a petitioner's state remedies have been exhausted and not procedurally defaulted, the federal court may examine the merits of the underlying claim.   However, under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court cannot grant relief on any claim adjudicated on the merits by the state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts."   28 U.S.C. §§ 2254(d)(1)-(2).   A state court's adjudication is only contrary to clearly established federal law if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.   Williams v. Taylor, 529 U.S. 362, 412-13 (2000).   A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case.   Id. at 413.   Factual determinations made by a state court, however, are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence."   28 U.S.C. §

2254(e)(1); see Hill v. Ozmint, 339 F.3d 187, 194 (4th Cir. 2003).

Freeman presents two claims that he was denied the right to effective assistance of counsel.   He asserts his attorney made an incorrect statement of the law governing the calculation of his mandatory sentence for his eight gun charges by arguing to the trial judge that his "hands are tied" and that he was "stuck at 38 years."   Pet. at 12 (ECF No. 1).   As the Respondent now concedes, a recent change in Virginia law permitted the trial court to run some or all of the gun sentences concurrently with each other, and thus impose a sentence within the guideline range.   Freeman also claims that, because of his defense counsel's misunderstanding of the same sentencing issue, his attorney failed to consult with him regarding appeal of his sentence on the basis of the sentencing judge's apparent misunderstanding of precedent regarding his ability to run some or all of the mandatory gun charge sentences concurrently.   Id. at 17).   Because Claim 3 is essentially a second iteration of the first ineffectiveness error, the court analyzes the two claims together.   Each of these claims was resolved on the merits by the Richmond Circuit Court and refused by the Supreme

Court of Virginia.   Thus, to obtain relief in this Court, Jones must overcome the standard set forth in § 2254(d).[9]

In both ineffective assistance of counsel claims, the Virginia courts identified the appropriate legal standard, the Strickland test.   What remains, then, is an assessment of the courts' fact finding and the application of those facts under the Strickland test.   The state court's factual findings are presumed correct.   Only if Freeman can establish an unreasonable determination of fact by clear and convincing evidence, may this court consider his habeas claims and award relief.   Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) (citing 28 U.S.C. § 2254(d)).

In reviewing an ineffective assistance of counsel claim, the relevant inquiry is whether the petitioner's attorney's "unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).   This presumption is difficult to overcome because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 687. In order for Freeman to succeed on his ineffectiveness claims,

---

[9] The Supreme Court's refusal of Freeman's appeal is an "adjudication" on the merits. Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000). Its decision is presumed to rely on the reasons given by the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 801-03 (1991).

here he must satisfy both the "performance" and the "prejudice" prongs of the two-part test set forth in Strickland, 466 U.S. at 687.[10]   To satisfy the "performance" prong of the test, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  To satisfy the "prejudice" prong of the test, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.[11]

In this case, the state habeas court resolved Freeman's ineffectiveness claims against him on the basis that his attorney's sentencing argument reflected a "strategic decision to seek a totally suspended sentence as it regards the underlying felony offenses." Freeman v. Clarke, No. CL15-3081-2, Final Order at 12 (Ex. 2 to ECF No. 13).  In other words, although a guideline sentence could have been fashioned by suspending some of the underlying felony time and running at least some of the gun sentences concurrently, the state court held that counsel believed it would be better for his client

---

[10] As both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Freeman must satisfy both requirements of the test to prevail on the merits.  Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); see also Strickland, 466 U.S. at 697.

[11] The Supreme Court went on to define a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

strategically not to argue for concurrent time on any gun charges.  This factual finding was unreasonable.

It bears mention here that Freeman has expressly alleged his attorney was ineffective for failing to argue for concurrent sentences.  Pet. at 14-16 (pp. 17-19 in ECF No. 1).  And the state court record did not include any affidavit or testimony from counsel or any evidence upon which the court could conclude the decision was strategic other than the transcript itself. Moreover, that transcript of the sentencing proceeding unequivocally rebuts such a suggestion.

During the sentencing hearing, Freeman's attorney stated to the trial judge no fewer than four times his incorrect belief that a sentence of less than 38 years was not possible. Beginning with the discussion regarding which sentencing worksheet to use he confirmed that the mandatory time would be 38 years. He then argued:

> Judge, I have from the very beginning in my conversations with my client, advised him of the mandatory minimums and that this court is bound by law and by statute to impose that.  I know there's been some tinkering with that and whether or not you can run any of that concurrent, but you can't run it concurrent with the underlying charge since all of these come out of one thing.  I don't know how you would structure a sentence of that nature, and I don't think the law allows you to.  So I believe we are stuck at 38 years.
>
> What I'm going to ask the Court to do is not impose any additional time on the abduction and robbery and

> the attempted robbery because the 38 years is well
> above the guidelines.

Trial Tr. at 157-58 (emphasis added).  Later, in his request for

leniency, he reiterated to the judge "your hands are tied to the

extent of the 38-year sentence."  This was a plain, incorrect

statement of the law after the <u>Brown</u> opinion issued.  <u>See</u> <u>Brown</u>,

733 S.E.2d. at 638, 640, 641.  In briefing before this court,

the Respondent expressly acknowledges the error, writing: "In

light of the record of the petitioner's sentencing, it appears

that the prosecution, the defense attorney, and the sentencing

judge all operated from a misapprehension concerning the

applicability of <u>Brown</u> to the petitioner's sentence for the use

of a firearm.  To the extent the prosecution and defense

suggested that a sentence of thirty-eight years was required,

they were incorrect as a matter of law."  Resp't's Supp. Br. at

4 (ECF No. 17).

After sentencing, in a letter counseling Freeman on what

post-trial course of action to take, counsel described Freeman's

rights to appeal and stated he did not see meritorious grounds

for appeal in the case.  He made no mention of any error in the

sentence.[12]  Letter from counsel to Tyvone Freeman (Apr. 11,

2013).  In both instances, counsel erred as a result of

---

[12] Freeman does not contend, nor could he, that the judge committed any legal error by imposing a 38-year sentence.  But Freeman does not challenge the constitutionality of his sentence, only the constitutionality of his representation during sentencing.

misunderstanding the controlling law on the issue of concurrent or consecutive sentencing on these eight gun charges. There is no evidence that counsel deliberately urged the court to run all the gun sentences consecutively, despite his discretion to run some or all of them concurrently. The state court's presumption that he did so is unreasonable on the record before it.

Counsel must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. But choices as to strategy made after only limited research "are reasonable [only] to the extent that reasonable professional judgments support the limitations on investigation." Id. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland." Hinton v. Alabama, 134 S. Ct. 1081, 1089 (2014). Certainly, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington, 562 U.S. at 109 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)). But courts "may not indulge 'post hoc rationalization' for counsel's

decisionmaking that contradicts the available evidence of counsel's actions." Id. (quoting Wiggins v. Smith, 539 U.S. 510, 526-27 (2003)). Decisions made in trial based on ignorance of the law "cannot be accorded the same presumption of reasonableness as is accorded most strategic decisions." Dixon v. Snyder, 266 F.3d 693, 703 (7th Cir. 2001).

In Dixon, for example, the petitioner's attorney had opted not to cross examine a witness, not because he made a strategic choice, but because he did not know of a change in the law affecting the admissibility of an inconsistent statement by the witness. Id. at 701. The court found there was no reason for the attorney not to know the law accurately: it had been established clearly for seven years, and the attorney had known for eight months that the possibility the statement's admissibility would come up at trial. Id. at 702. Nevertheless, the Illinois state court, in its habeas review of the trial, found the attorney's performance was not constitutionally deficient. Id. The district court and the Seventh Circuit disagreed with the state court and held the attorney's choice was unreasonable because it was premised on an unreasonable failure to know the law. Id at 703.

Likewise here, Freeman's counsel's misunderstanding of Brown cannot be justified as a reasonable strategic choice. The Supreme Court of Virginia issued its opinion in Brown v.

Commonwealth on November 1, 2012.  733 S.E.2d 638, 638 (2012).
This was more than five months before Freeman's sentencing.  In
Brown, the Supreme Court clarified that, although a sentence for
a conviction under Virginia Code § 18.2-53.1 for use of a
firearm in the conviction of a felony had to run consecutively
with any sentence imposed for the underlying felony, "multiple
sentences imposed pursuant to Code § 18.2-53.1 [for use of a
firearm in the commission of a felony] may be run concurrently."
Id. at 640-41.  Thus, at Freeman's sentencing — held after Brown
was decided — the judge had discretion to run all or any number
of Freeman's eight mandatory gun sentences concurrently.  None
of the other felony charges were subject to mandatory sentences
and thus, the trial court was free to impose suspended time on
the underlying felonies (as it eventually did) and sentence
Freeman to a sentence anywhere in his guideline range.  As
Respondent now concedes, running even two or three of the gun
sentences concurrently with each other would have permitted the
sentencing judge to fashion a sentence within Freeman's robbery
guideline range of 18 to 28 years, or the abduction range of 13
to 33 years. In these circumstances, it is unlikely Freeman's
attorney made a strategic choice to argue that the trial judge
was "stuck at 38 years."  While the state habeas opinion
attributes some knowledge of the Brown opinion to Freeman's
counsel, it is clear he did not fully appreciate the impact of

its holding on Freeman's overall sentence.  In fact, it was Freeman's counsel - more than the prosecutor - who expressly advised the trial court that he was bound to impose a 38-year sentence.  The prosecutor had not completed the worksheet to reflect mandatory time and did not argue for any specific sentence after the trial.

The Commonwealth offers scant, circumstantial support in the record for the Richmond Circuit Court's finding that defense counsel made a properly-informed, strategic choice.  Rather, it urges this court to overlook extensive compelling evidence in the record that counsel simply misunderstood the law and, as a result, misinformed the court.  Most problematic from the standpoint of the present review, the state court did not receive any evidence from Freeman's attorney suggesting that he had made a strategic choice.

Just as in Dixon, Freeman's attorney did not make a strategic choice; rather, he made the best argument he could, based on his incorrect understanding of precedent.  In Dixon, the court inferred that counsel should have known the law because it had been clearly established for many years.  See Dixon, 266 F.3d at 702.  Here, no inference is needed: counsel specifically acknowledged recent "tinkering" that clarified the law on consecutive gun sentences but still misstated the impact of the holding to the court.  Compare Brown, 733 S.E.2d at 641

("[M]ultiple sentences imposed pursuant to Code § 18.2-53.1 may be run concurrently."), with Trial Tr. at 157 (defense counsel: "I believe we are stuck at 38 years."). The error is made more obvious by counsel's admission that "from the very beginning," he had warned his client of the consequences of so many mandatory gun sentences. The evidence in the record is clear and convincing that, in this case, the state habeas court unreasonably determined that Freeman's counsel acted strategically when he urged the court to impose a mandatory 38-year sentence.[13]

Because the court concluded Freeman's counsel had made a "strategic choice" to ask the court to run the gun charges consecutively, it also concluded that Freeman was not prejudiced because the argument "succeeded" in persuading the trial court. But this absence of prejudice depends entirely on the supposed strategic decision. In other words, the court did not hypothetically consider whether the trial judge would have imposed the same sentence absent error. Instead, it concluded that there was no prejudice because counsel's incorrect argument was accepted and he received only the mandatory time imposed in consecutive sentences. In fact, absent that finding, it is

---

[13] It also bears mention that the Circuit Court judge who resolved Freeman's state habeas claims was not the trial judge who heard the sentencing arguments and imposed sentence. See Schriro v. Landrigan, 550 U.S. 465, 476 (2007) (post-conviction judge who was also the sentencing judge is "ideally situated" to make habeas findings concerning sentencing error).

likely that Freeman was prejudiced by the error.  First, he
received a sentence five years in excess of even the longest
guideline sentence recommended for his offense conduct, and ten
years longer than the maximum guidelines tendered for the
robbery offenses.  While the Respondent notes that Virginia's
guidelines are discretionary and not mandatory, there is
evidence even in the transcript that Freeman may well have
received a lower sentence.  The sentencing judge observed that,
for a series of crimes in which no person was physically
injured, the eight mandatory sentences running consecutively
result in a more severe sentence than the court would impose for
murder.  Trial Tr. at 164.

Strickland prejudice does not require that Freeman prove to
a certainty that he would have received a lower sentence, only a
"reasonable probability that but for counsel's errors" the
result of the proceeding would have been different.  See United
States v. Carthorne, ___ F.3d ___, No. 16-6515 (4th Cir., Dec.
21, 2017) (finding Strickland prejudice from attorney error
which resulted in guideline range raised by 7.5 years). In this
case, absent the presumption afforded counsel's strategic
decision, there is a reasonable probability that the judge would
have imposed a shorter sentence if he had not been misinformed
about the necessity to run all eight gun charge sentences
consecutively.  Accordingly, Freeman has plausibly alleged he

was prejudiced by his attorney's error: he probably received a longer sentence than he would have absent his attorney's mistake.

Making a decision based on an unreasonable misunderstanding of the controlling law cannot be constitutionally adequate assistance of counsel: it frustrates the adversarial process in precisely the manner the Supreme Court sought to remedy in Kimmelman. See 477 U.S. at 374; accord Jones v. Clarke, 783 F.3d 987, 993 (4th Cir. 2015) (Gregory, J., dissenting) ("[A] functioning adversarial system requires actual adversaries."). The error in this case upset the adversarial process as counsel united to advocate an incorrect interpretation of the law, which led the court to conclude it lacked any discretion to fashion a guideline sentence.

Having found sufficient facts alleged to plausibly state claims for habeas relief, the undersigned recommends denying the Respondent's Motion to Dismiss as to two of Freeman's claims. Either party should be permitted to move for summary judgment, if warranted after further review.

**5.    Further development of the record.**

Because the AEDPA limits the circumstances under which a federal court may grant habeas relief on claims already litigated in state court, habeas petitioners in federal court are "not entitled to discovery as a matter of ordinary course."

Stephens v. Branker, 570 F.3d 198, 213 (4th Cir. 2009)
(citations omitted). Rule 6 of the Rules governing habeas
proceedings requires "reasons for the request" and "good cause,"
including "specific allegations suggesting that the petitioner
will be able to demonstrate that he is entitled to habeas corpus
relief." Id.

In addition, when a claim has been decided on the merits,
the highly deferential standard of review under 28 U.S.C. §
2254(d)(1)-(2) allows for the presentation of new evidence on a
federal habeas claim, only if the state court's decision is
based on an unreasonable factual determination, contrary to or
based on an unreasonable application of federal law.
Harrington v. Richter, 562 U.S. 86, 783-84 (2011). Under Cullen
v. Pinholster, review under § 2254(d)(1) to determine whether a
state court finding was based on an unreasonable determination
of fact "is limited to the record that was before the state
court that adjudicated the claim on the merits." 563 U.S. 170,
181 (2011). However, "if [the court] make[s] an antecedent
determination—relying solely on evidence before the state court—
that the state court's adjudication 'resulted in a decision that
was contrary to, or involved an unreasonable application of,
clearly established Federal law,' or that the state court's
decision 'was based on an unreasonable determination of the
facts,' [the Court] . . . may then consider evidence that was

properly presented for the first time in federal court." Detrich v. Ryan, 677 F.3d 958, 972 (9th Cir. 2012), vacated on other grounds, 740 F.3d 1237 (9th Cir. 2013); see also Hale v. Davis, 07-12397, 2011 WL 3163375, *9 (E.D. Mich. July 27, 2011) ("[Cullen] made clear that a petitioner must show he is eligible for habeas relief under the rigorous standard set forth in 28 U.S.C. § 2254(d)(1) before evidence submitted in federal court may be considered.").

In this case, the undersigned has recommended denying Respondent's Motion to Dismiss on two of Freeman's claims for relief. Freeman has plausibly alleged claims which, if established, may entitle him to habeas relief. After reviewing the record before the state court, the undersigned also finds that the state court's holdings rest on unreasonable factual determinations which necessarily underlie the state court's application of federal law. Accordingly, the undersigned believes discovery and an evidentiary hearing are consistent with the deference due to the state court's decision under AEDPA.

A federal court that has concluded that a state court's decision was based on an unreasonable determination of the facts may conduct a de novo review, but its ability to conduct an evidentiary hearing is still bound by 28 U.S.C. § 2254(e)(2). Pinholster, 563 U.S. at 185 ("Section 2254(e)(2) continues to

have force where § 2254(d)(1) does not bar federal habeas relief."). Section 2254(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A) the claim relies on-
> >
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Under § 2254(e)(2) petitioner will only be charged with a "failure to develop" the facts if "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000); see also Hurst v. Branker, 1:10CV725, 2011 WL 2149470 (M.D.N.C. June 1, 2011). "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." Williams, 529 U.S. at 435.

Under the circumstances, the undersigned concludes Freeman has not "failed to develop the factual basis of his claim" in state court and § 2254(e)(2) presents no bar to an evidentiary hearing in this Court. Freeman asserted his ineffectiveness claims in a timely fashion and the state court resolved them against him without a hearing. Pet. at 11 (p. 14 to ECF No. 1). The state habeas court apparently denied them without receiving any evidence from Freeman's attorney, using an order prepared by Respondent's counsel. Freeman v. Clarke, No. CL15-3081-2 at 14 (Ex. 2 to ECF No. 13). Finally, the habeas case was decided by a different judge than Freeman's trial judge who had heard all the evidence of his offenses, determined his guilt and received his counsel's erroneous sentencing argument. It does not appear that Freeman was afforded any ability to develop evidence regarding his attorney's sentencing argument other than what appears in the trial court record. That evidence is insufficient to sustain the factual findings underlying the state court's decision even under § 2254(d)'s deferential standard of review.

## II.   RECOMMENDATION

As to Freeman's claims of prosecutorial vindictiveness, the undersigned recommends that, Respondent's Motion to Dismiss (ECF No. 11) be GRANTED IN PART. As to the claims of ineffectiveness of counsel, the undersigned recommends the Respondent's Motion

be DENIED IN PART.  The undersigned further recommends the court appoint counsel pursuant to Rule 8 of the Rules Governing Habeas Corpus Proceedings, and thereafter, direct counsel for the parties to confer regarding the need for any discovery, or an evidentiary hearing.

### III.  **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

(1) Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

(2) A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v.

Hutto, 737 F.2d 433 (4th Cir.1984); United States v. Schronce, 727 F.2d 91 (4th Cir.1984).

The Clerk shall mail a copy of this Order to the petitioner and provide an electronic copy to counsel of record for the Respondent.

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

December 22, 2017

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:

**Tyvone Freeman**
1155841
River North Correctional Center
329 Dellbrook Ln
Independence, VA 24348

A copy of the foregoing was provided electronically this date to:

**Benjamin Hyman Katz**
Office of the Attorney General (Richmond)
202 North 9th Street
Richmond, VA 23219

Fernando Galindo, Clerk

By_____
Deputy Clerk

_____, 2017

37