UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TYVONE FREEMAN, #1155841,

     Petitioner,

v.                                    CIVIL ACTION NO. 2:17cv76

HAROLD CLARKE, *Director,*
*Virginia Department of Corrections,*

     Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

     Petitioner Tyvone Freeman seeks a writ of habeas corpus alleging constitutional errors underlying his state conviction and sentence on charges of robbery, attempted robbery, abduction for pecuniary benefit and his use of a firearm while committing the other offenses.  The Respondent moved to dismiss Freeman's petition, and the court previously granted in part and denied in part that motion.  See R. & R. (ECF No. 21), adopted in full by Order (ECF No. 41).

     Freeman claims he was denied effective assistance of counsel during his sentencing hearing and on appeal, when his attorney incorrectly advised the trial court that it was required to run his eight mandatory gun sentences consecutively.  A recent change in Virginia law allowed the sentencing court to run some or all of the firearm sentences concurrently with each

other.  In denying Respondent's Motion to Dismiss, this court held that the state habeas court's denial of Freeman's ineffectiveness claims was premised upon an unreasonable factual finding that counsel's actions during sentencing were "strategic."  R. & R. (ECF No. 21).  This resulted in an application of Strickland which could not reasonably be sustained on the record before the state habeas court. Accordingly, the court granted Freeman's request for the appointment of counsel and directed the parties to submit additional briefing and confer regarding the need for an evidentiary hearing to finally resolve Freeman's ineffectiveness claims.  Order (ECF No. 41).  The parties have now submitted supplemental briefs supported by an affidavit from Freeman's trial counsel, Counsel's Aff. (ECF No. 49-1), and a set of stipulated facts, Joint Stipulation (ECF No. 49-2).  They agree there is no need for a hearing to resolve conflicts in the evidence before the court, and both supplemental briefs address the record, as supplemented, in arguing for the grant or denial of habeas relief.

After reviewing all of the foregoing, and for the reasons explained in detail below, the undersigned now RECOMMENDS the court order Freeman be re-sentenced by the GRANT of a conditional writ of habeas corpus to Freeman, which will become effective if the Commonwealth of Virginia does not conduct a new

sentencing hearing within 90 days of the entry of the conditional writ.

## I.  <u>STATEMENT OF THE CASE</u>

Freeman is incarcerated at the River North Correctional Facility in Independence, Virginia. He is serving an active 38-year prison term pursuant to final judgment orders following his criminal conviction in the Circuit Court of the City of Richmond, entered on February 15, 2013, for crimes he committed on July 26, 2012.

## A.   **Summary of the evidence before the state habeas court.**[1]

Freeman entered the offices of the Peter Paul Development Center[2] with a pistol in hand and told the three people in the reception area, Anthony Christian, Danyelle Barnes, and Eddie Ross, "I want everyone's wallet." <u>Freeman v. Commonwealth</u>, No. 0818-13-2, slip op. at 1 (Va. Ct. App. Apr 29, 2014) (per curiam). When these first three people he encountered told him they had no money, Freeman moved farther into the office, encountering Ingrid Deroo and Damon Jiggetts. He pointed the gun at each of them, ordering them to return with him back into

---

[1] This summary of the evidence before the state court is repeated from the court's earlier decision, as it is relevant to assessing his attorney's performance on the claims remaining to be decided.

[2] The Peter Paul Development Center is "an outreach and community center serving Church Hill and neighboring communities in Richmond's East End. Founded in 1979, it is the oldest community-based agency continually serving Church Hill children and families." <u>About Us</u>, Peter Paul Development Center, https://www.peterpauldevcenter.org/about-us/ (last visited Oct. 18, 2017).

the reception area.  Id. at 1-2.  Shortly thereafter, a sixth person, Jonathan Armstrong, walked down the hall and on confronting Freeman was also ordered to remain in the reception area.  There, Freeman told the six victims, "If somebody don't give me any money, somebody is going to get hurt."  Id. at 2. Ross was the only victim to give Freeman any money: eight dollars and "some change."  Id. at 3.  When Ross went to hand the money to Freeman, some of it fell to the floor.  Id. Freeman picked up the dropped money and ran from the office. Id.

Originally Freeman was charged with 28 felonies.  At trial without a jury, the Richmond Circuit Court convicted Freeman of 16 felonies, including two counts of abduction for pecuniary benefit for forcing Deroo and Jiggetts — but not Armstrong — into the reception area.  He was also convicted on one count of robbery for taking the money from Ross and five counts of attempted robbery of the five other victims.  Additionally, he was convicted on eight separate charges of using a firearm in the commission of the eight underlying felony offenses. Resp't's Br. at 1-2 (ECF No. 13).

At sentencing the prosecutor tendered a sentencing worksheet with the guideline range computed based on Freeman's robbery convictions.  Absent a reason for a varying sentence, Virginia courts generally apply the sentencing guidelines for

4

the most serious offense of which the defendant was convicted.[3] <u>Va. Sentencing Guidelines Manual</u>, "Introduction," at 5 (15th ed. 2012).  In this case, the guideline range for Freeman's offenses calculated using the robbery sentencing worksheet was 18 years, 2 months, to 28 years, 6 months. Sentencing Guidelines Worksheet (Apr. 8, 2013).  The prosecutor had also calculated the range using the abduction offense which she described during sentencing as 13 years, 9 months, to 33 years, 1 month.  Trial Tr. at 155-56.

Both attorneys represented to the court that they agreed to use the robbery guidelines for the sentencing worksheet, because the mandatory sentences for Freeman's eight firearms charges required the court to impose a 38-year sentence.[4]  As a result, both counsel stated that the minimum total mandatory sentence on the firearms charges would exceed the highest end of the guideline range when calculated using either the robbery or abduction worksheets.  Trial Tr. at 155-56.  Neither counsel evaluated for the court which guidelines range to use (abduction or robbery), apparently believing it made no difference.  The prosecutor handed up the worksheet with the robbery guidelines

---

[3] The rules for determining which offense is "most serious," and therefore which sentencing worksheet to use, are detailed in the <u>Guidelines Manual</u>. "General Instructions," at 5-7.

[4] Under Virginia Code § 18.2-53.1 the mandatory sentence for using a firearm during a robbery is three years for a first offense and five years for a second or subsequent offense.

(18 to 28 years) without marking the box for a mandatory minimum. When asked by the trial judge if the worksheet reflected the mandatory time, she indicated, "I didn't check the box. I could do that, but then all the boxes would say 38 years and I didn't know if that would be helpful to you to have all 38 years." Trial Tr. at 156. The court inquired of Freeman's counsel, "Do you agree?" and he responded, "It's 38 years." The court then checked the box and wrote below "38 yrs." Id.; Sentencing Guidelines Worksheet (April 8, 2013). Counsel correctly calculated the mandatory sentences if all eight were run consecutively, however, a recent decision by the Supreme Court of Virginia confirmed that the mandatory gun sentences could be run concurrently with each other and thus, the court had discretion to impose less than a 38-year active sentence. See Brown v. Commonwealth, 733 S.E.2d 638, 640 (Va. 2012).

In his argument on sentencing, Freeman's counsel stated that he had advised his client of the mandatory sentences "and that this court is bound by law and by statute to impose that." He acknowledged that "there's been some tinkering with that and whether you can run any of that concurrent, but you can't run it concurrent with the underlying charge." He concluded, stating, "I don't know how you would structure a sentence of that nature [presumably less than 38 years], and I don't think the law allows you to. So I believe we are stuck at 38 years." Trial

Tr. at 157.  He then asked the court to "temper its justice with
mercy, even though your hands are tied to the extent of the 38-
year sentence.  I would ask you not to impose anything more than
that."  Trial Tr. at 159.  He urged the court to suspend all the
time on the remaining underlying offenses "because 38 years is
well above the guidelines."  He also noted his client would be
"well into his 60s" before he's eligible to be released.  He
noted that two of the witnesses stated that Freeman apologized
for his actions as he left the scene of the robbery, and two
others described him as flustered and "distressed."  Trial Tr.
at 159.

The prosecutor then argued that Freeman's victims suffered
a loss much more significant than the stolen funds.  She stated
they were traumatized by Freeman's actions and observed that
Freeman had a long criminal record.  She asked the court to
consider all of that – but did not request any specific
sentence.  Trial Tr. at 161.

For the charges of robbery, attempted robbery, and
abduction, the Richmond Circuit Court imposed a total sentence
of 110 years in prison, though it suspended that entire
sentence.  For the eight firearms convictions, the court imposed
an active sentence of 38 years of imprisonment, three years for
the first offense, and five for each additional offense, all
running consecutively.  Sentencing Orders (Ex. 1 to ECF No. 13).

After pronouncing the sentence, the court observed, "I'm going to go with the mandatory minimum on this. This is more than we do in murder cases, so I think it's a sufficient punishment for what happened this day." Trial Tr. at 164.

On direct appeal, Freeman challenged the trial court's finding that Freeman's actions were sufficient to support both robbery and abduction charges, arguing that his detention of the victims was integral to the robbery and thus could not be used to support the abduction charges. The Virginia Court of Appeals affirmed Freeman's conviction. Freeman, No. 0818-13-2, slip op. at 1. He filed a petition for appeal in the Supreme Court of Virginia, which that court denied. Resp't's Br. at 2 (ECF No. 13).

**B.  Procedural history of Freeman's habeas petitions.**

On June 25, 2015, Freeman timely sought a writ of habeas corpus in the Richmond Circuit Court. Freeman asserted numerous claims, including the ineffective assistance of counsel claims presently before this court. State Pet. at 4-15. The state habeas petition was not decided by the trial judge who had heard the evidence against Freeman, determined his guilt, and imposed sentence. Instead, it was assigned to a different judge in the same court.

On December 4, 2015, without taking evidence, the state habeas court denied and dismissed Freeman's petition. As

8

relevant here, the state habeas court denied Freeman's claims of ineffective assistance of counsel (Federal Claims 2 and 3), concluding that Freeman's attorney made a "strategic decision" not to seek concurrent sentences on any of the eight firearms charges, and instead only request suspension of all of the time on the remaining offenses.  Final Order at 11-13, Freeman v. Clarke, No. CL15-3081-2 (Va. Cir. Ct. Dec. 4, 2015) (ECF No. 13-2).  As a result, the state habeas court held Freeman could not meet either the performance or prejudice prong of Strickland.

Freeman appealed the trial court's denial to the Supreme Court of Virginia.  Pet. for Appeal (Ex. 3 to ECF No. 13).  In his petition, Freeman "assigned . . . issues to be raised on appeal" that he numbered 1 through 7.  The Supreme Court construed these "issues" as assignments of error.  They overlapped, but did not correspond exactly with Freeman's claims in Circuit Court.

On December 12, 2016, the Supreme Court of Virginia dismissed in part and refused in part Freeman's appeal.  The Court rejected some of his assignments of error because Freeman failed to comply with a Virginia Supreme Court Rule requiring assignments of error to identify error in the ruling of the court from which the appeal is taken, a violation of Virginia appellate procedure rules.  Va. Sup. Ct. R. 5:17(c)(1)(iii).  In the same order, the Supreme Court of Virginia refused the appeal

as it related to petitioner's Assignments of Error corresponding to his claims of prosecutorial vindictiveness and ineffective assistance of counsel, thus exhausting those claims for purposes of federal review.   O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Order, No. 160212 (Va. Dec. 12, 2016) (ECF No. 13-4).

On February 7, 2017, Freeman timely filed his federal petition for a writ of habeas corpus in this court.   Freeman's federal petition raises one due process claim and two claims related to the ineffectiveness of trial counsel.   Specifically, he argues:

> (1) A deprivation of due process, premised upon a claim of prosecutorial vindictiveness (State Claim 3) (Assignment of Error 4);
>
> (2) Ineffective assistance of counsel based upon his counsel's error regarding the mandatory calculation of sentence for petitioner's eight firearm violations (State Claims 2 and 5) (Assignment of Error 2);
>
> (3) Ineffective assistance of counsel based counsel's alleged failure to consult with the petitioner concerning the advisability of appealing the sentence imposed by the trial court (State Claim 7) (Assignment of Error 2).

Pet. at 2-4 (ECF No. 1).

The undersigned first considered the Respondent's Motion to Dismiss and issued a Report and Recommendation that was subsequently adopted and approved in full by the assigned District Judge.   Order (ECF No. 41); R. & R. (ECF No. 21).   The court found that Freeman properly exhausted the three claims contained in the present Petition.   R. & R. at 12 (ECF No. 21).

The court also found that Freeman's two ineffective assistance of counsel claims were not procedurally defaulted and were therefore within the court's jurisdiction to review under the deferential standard of 18 U.S.C. § 2254(d). Id. at 15-17. Because Freeman's claim of prosecutorial vindictiveness was procedurally defaulted, and Freeman could not make the requisite showing to excuse the default, the court dismissed it. Id. at 12-13 (citing Hedrick v. True, 443 F.3d 342, 360 (4th Cir. 2006); Mueller v. Angelone, 181 F.3d 557, 584 (4th Cir. 1999); Yeatts v. Angelone, 166 F.3d 255, 264 (4th Cir. 1999)). With regard to the ineffectiveness claims, however, the court held that the state court's denial of habeas relief was premised on an unreasonable factual finding, namely that Freeman's counsel knew that Brown had recently changed the law with regard to the consecutive mandatory gun sentences, but made a "strategic decision" not to argue for concurrent sentences on any of his eight firearm convictions.

The court also determined that Freeman "has not 'failed to develop the factual basis of his claim' in state court and § 2254(e)(2) presents no bar to an evidentiary hearing in this court." Id. at 33-34. The parties thereafter submitted evidence related to Freeman's ineffective assistance of counsel claims, including an affidavit from Freeman's trial counsel and a set of agreed stipulations related to the sentencing in his

11

case, and the general sentencing process followed by the trial court judge.

**C.    Summary of supplemental evidence.**

In his affidavit, Freeman's trial attorney candidly acknowledged that at the time of Freeman's sentencing he misunderstood the Supreme Court of Virginia's holding in Brown, and that had he understood it correctly, he would have argued for a lower sentence.

> I misunderstood [Brown] and advised the Trial Court that the sentences under Code Section 18.2-53.1 could not be run concurrently but had to be run consecutively. Had I understood Brown correctly I would not have advised the Trial Court in such a fashion but instead would have asked for a sentence within the guidelines appropriately calculated for one of Mr. Freeman's primary felony convictions. I would have attempted to fashion a sentence, with some of the 18.2-53.1 sentences running concurrently, which would have placed Mr. Freeman's sentence within the guidelines of a primary felony offense. My decision to agree to a 38 year sentence was not strategic calculation in consideration for the imposition of any other discretionary sentence.

Counsel's Aff. at 2 (ECF No. 49-1).

Freeman's trial attorney also stated that he believes the prosecutor also misunderstood the impact of the Brown decision on Freeman's case, and "agreed with my representation that the court had to sentence Mr. Freeman consecutively on the 18.2-53.1 convictions." Counsel's Aff. at 2 (ECF No. 49-1). Neither party submitted any contradictory evidence from the prosecutor herself.

Because the state habeas decision was not rendered by the trial judge, the parties' stipulations also address the sentencing court's awareness of <u>Brown</u>, and its impact on Freeman's sentence. The trial judge has stated that he could not recall when he first learned the details of the <u>Brown</u> ruling, and that if counsel for both sides had not addressed it with him during Freeman's sentencing he might not have known about it. Joint Stipulation of Fact at 2 (ECF No. 49-2). The trial judge also described himself as a "guidelines judge," meaning he endeavors to adhere to the guidelines, and that – although he has not previously done so – he would have at least considered running some of Freeman's firearms charges concurrently if he had known he could have. <u>See id.</u> The parties also stipulate, and the record amply demonstrates, that at the time of Freeman's sentencing counsel had prepared sentencing guideline worksheets reflecting the guideline range applicable to the two most serious underlying felonies (abduction and robbery), and the trial judge knew what these lower ranges were. Freeman's trial attorney believes and attests, based on the trial judge's comments and from his previous experience with that trial judge, "that had the Trial Court been advised of its ability to run the 18.2-53-1 sentences concurrently, it would have done so in an attempt to stay within the guidelines" for one of Freeman's predicate felonies. Counsel's Aff. at 2-3 (ECF No. 49-1).

## III.   ANALYSIS

The court's opinion on Respondent's Motion to Dismiss addressed the deference due to the state habeas court under 28 U.S.C. § 2254(d).   But in light of the arguments presented in the current briefing, the court's analysis will begin by reviewing that decided question.   The court cannot issue a writ of habeas corpus to a state prisoner

> based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   And, under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," unless the petitioner satisfies his "burden of rebutting the presumption of correctness by clear and convincing evidence.[5]

Merzbacher v. Shearin, 706 F.3d 356, 363-64 (4th Cir. 2013). The statute permits federal habeas relief where the state court "identifies the correct governing legal principle from the [Supreme] Court's decisions, but unreasonably applies that principle to the facts."   Grueninger v. Director, Va. Dept. of Corr., 813 F.3d 517, 524 (4th Cir. 2016) (citing Wiggins v.

---

[5] The Supreme Court has positively not resolved the exact mechanics of the interplay between 28 U.S.C. §§ 2254(d)(2) and 2254(e)(1).   Wood v. Allen, 558 U.S. 290, 300 (2010).   However, the Fourth Circuit has made clear that "the § 2254(e)(1) standard has a place in § 2254(d)(2) review:   We consider whether the state . . . court based its decisions on an objectively unreasonable factual determination in view of the evidence before it, bearing in mind that factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."   Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) (internal quotation marks omitted) (quoting Baum v. Rushton, 572 F.3d 198, 210 (4th Cir. 2009)), as amended (Dec. 12, 2012).

Smith, 539 U.S. 510, 520 (2003). This court, with its findings in the previous Report and Recommendation (ECF No. 21) and Order (ECF No. 41), determined that "[t]he evidence in the record is clear and convincing that, in this case, the state habeas court unreasonably determined that Freeman's counsel acted strategically when he urged the court to impose a mandatory 38-year sentence." R. & R. at 28 (ECF No. 21). The state court's corresponding finding that there could not have been prejudice if there was no inadequate performance was also therefore unreasonable by clear and convincing evidence. Id. at 28-30. Once a petitioner satisfied § 2254(a)(2), a federal habeas court should decline to apply AEDPA deference. Austin v. Plumley, 565 F. App'x 175, 184-85 (4th Cir. 2014) (collecting cases from the Ninth, Tenth, and Eleventh Circuit Courts of Appeal).

Although this court already found that the state court's denial of Freeman's petition was based on an unreasonable finding of fact in light of the record the state court considered, it also authorized additional development of the record to finally resolve the case. See R. & R. at 30-34. The additional evidence submitted by the parties has only reinforced the court's earlier conclusion that Freeman's attorney erred during his sentencing hearing and that Freeman likely received a longer sentence because of the error. Because the state habeas court's fact-finding on these material issues resulted in an

unreasonable application of <u>Strickland</u>, this report recommends that the court order relief under a conditional writ of habeas corpus.

**a.  <u>Ineffectiveness under Strickland v. Washington</u>**

Freeman asserts his attorney made an incorrect statement of the law governing the calculation of his mandatory sentence for his eight gun charges by arguing to the trial judge that his "hands are tied" and that he was "stuck at 38 years." Pet. at 12 (ECF No. 1).  As a result, he argues that his performance fell below the standard required for constitutionally effective counsel and that he was prejudiced as a result. The Respondent concedes that a recent change in Virginia law permitted the trial court to run some or all of the gun sentences concurrently with each other, and thus impose an active sentence far less than 38 years and within the guideline range for either of Freeman's related felony convictions, but argues that counsel's performance was not deficient because a fully-informed attorney might have made the same argument, and Freeman's lengthy suspended sentence on the other charges precludes a finding of prejudice.

To prevail on his ineffective assistance of counsel claim, Freeman must identify "specific acts or omissions [which] were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  The relevant inquiry is whether

16

his attorney's "unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986).  This standard is difficult to meet because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 687.   In order for Freeman to succeed on his ineffectiveness claims, here he must satisfy both the "performance" and the "prejudice" prongs of the two-part test set forth in <u>Strickland</u>, 466 U.S. at 687.[6]  To satisfy the "performance" prong of the test, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> To satisfy the "prejudice" prong of the test, he must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.[7]

   As detailed below, the evidence before the state habeas court and the evidence submitted since this court's ruling on

----

[6] As both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Freeman must satisfy both requirements of the test to prevail on the merits.  <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994); <u>see also</u> <u>Strickland</u>, 466 U.S. at 697.

[7] The Supreme Court went on to define a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

the Respondent's Motion to Dismiss conclusively rebuts, by clear and convincing evidence, any conclusion that Freeman's attorney's performance was - or could have been - the product of a "strategic decision." By his candid admission, counsel did not appreciate the significance of the new rule announced in Brown, and stated without contradiction that had he properly understood it he would have argued for a lower sentence within the guideline range for one of Freeman's underlying felonies. In addition, stipulations and the attorney's affidavit establish a reasonable probability that Freeman would likely have received a lower sentence if his counsel had correctly informed the sentencing court of its discretion to allow Freeman to serve some of his eight mandatory gun sentences concurrently.

> **a. Freeman's counsel's performance during sentencing fell below an objective standard of reasonableness.**

In this case, the state habeas court resolved Freeman's ineffectiveness claims against him on the basis that his attorney's sentencing argument reflected a "strategic decision to seek a totally suspended sentence as it regards the underlying felony offenses." Final Order at 12, Freeman v. Clarke, No. CL15-3081-2 (Ex. 2 to ECF No. 13).[8] In other words, although a sentence within the guideline range for the

---

[8] Because the Supreme Court of Virginia refused further review of the Richmond Circuit Court's opinion, this court's review "looks through" the unexplained opinion, which is presumed to rest on the reasoning of the lower court. Wilson v. Sellers, ___ U.S. ___, 138 S. Ct. 1188, 1193-94 (2018).

underlying felonies could have been fashioned by suspending some of the underlying felony time _and_ running at least some of the gun sentences concurrently, the state habeas court held that counsel believed it would be better for his client strategically not to argue for concurrent time on any gun charges. This factual finding and the court's resulting application of Strickland was unreasonable in light of the evidence before the state habeas court — as this court has previously explained. R. & R. at 18-30 (ECF No. 21). Freeman's additional evidence conclusively rebuts the state court's conclusion.

In his supplemental briefing addressing the new evidence, Respondent asserts new justifications for Freeman's counsel's actions and the state habeas court's decision approving them. First, he argues that counsel's sentencing argument was not incorrect because under Virginia law the trial court was bound to "impose" all eight mandatory sentences regardless of whether it elected to run some sentences concurrently. (ECF No. 50 at 6-7). In addition, Respondent now argues that the multiple mandatory sentences would have superseded the guideline range for Freeman's underlying felonies and thus Freeman did not receive a sentence above the guidelines, reinforcing the soundness of counsel's strategy. Finally, viewing counsel's arguments objectively, Respondent argues that the state court's conclusion that they were the product of reasonable trial

19

strategy was not unreasonable. These new grounds to sustain counsel's decision-making were not presented to, nor relied upon by the state habeas court. As a result, the court is not bound to defer to them as it would the reasoned conclusions supporting the original decision. See Sellers, 138 S.Ct. at 1197 (noting that presumption of reliance on last reasoned state court decision is more likely to respect what the state court actually did than asking the federal court to substitute for silence its own thoughts as to more supportive reasoning). Moreover, none of these arguments undermine the court's earlier conclusion that Freeman's trial counsel's sentencing argument cannot be defended as a reasonable strategic choice.

During the sentencing hearing, Freeman's attorney stated to the trial judge no fewer than four times his incorrect belief that an active sentence of less than 38 years was not possible. In making this argument, counsel was plainly referring to an active period of incarceration, and not the length of any sentence imposed but not actively served due to concurrent service or suspension. This is so because the 38-year sentence he was describing includes only the minimum time on the eight § 18.2-53.1 gun charges. If – as Respondent suggests – counsel was "correct" in stating the court was bound to "impose" 38 years, it would suggest the court could have "imposed" no term of incarceration on any of Freeman's remaining eight felony

convictions.   Moreover,   Respondent's   new   argument   completely ignores counsel's express request that the court suspend all of the sentence on the underlying felonies.

There was no ambiguity in counsel's argument.   In fact, he described at length his concern about the court's lack of discretion.   It was also clear that counsel for both parties and the trial judge believed the guidelines for the underlying felonies were relevant.   As noted, counsel stated to the trial judge that the guideline range had been calculated for both the robbery and abduction charges.   When discussing which worksheet to use, Freeman's counsel argued:

> Judge, I have from the very beginning in my conversations with my client, advised him of the mandatory minimums and that this court <u>is bound by law and by statute to impose that</u>.  I know there's been some tinkering with that and whether or not you can run any of that concurrent, <u>but you can't run it concurrent with the underlying charge since all of these come out of one thing</u>.  I don't know how you would structure a sentence of that nature, <u>and I don't think the law allows you to</u>.  <u>So I believe we are stuck at 38 years</u>.
>
> What I'm going to ask the Court to do is not impose any additional time on the abduction and robbery and the attempted robbery because the 38 years <u>is well above the guidelines</u>.

Trial Tr. at 157-58 (emphasis added).   Later, in his request for leniency, he reiterated to the judge "your hands are tied to the extent of the 38-year sentence."   In fact, they were not tied. <u>See</u> <u>Brown</u>, 733 S.E.2d. at 638, 640, 641.

Respondent now contends counsel's sentencing argument is "[a]t most" "confusing or ambiguous," and that it could have been sound trial strategy "to suggest a sentence that the trial court would deem worthy of considering to avoid ostracizing the trial court by asking for something unreasonable." Resp't's Br. at 8 (ECF No. 50). Indeed, the Fourth Circuit has recognized the reasonableness of "tactical retreats" to maintain credibility with the court. E.g. Clozza v. Murray, 913 F.2d 1092, 1099 (4th Cir. 1990). But under any construction of the evidence, that is not what Freeman's counsel did here. Had that been counsel's goal, he would have wanted to emphasize the severity of imposing all eight sentences consecutively in light of the court's discretion to run them concurrently after Brown. Instead, Freeman's counsel urged the suspension of the remaining felony time, not as an alternative, but because he believed (incorrectly) that the court's "hands [were] tied," and it was "stuck at 38 years," and had no other basis to temper Freeman's sentence.

It bears mention too that Respondent's present contentions differ markedly from the arguments he made in the state habeas pleadings, and which the state habeas court ultimately adopted as its own. There, Respondent's counsel wrote that Freeman's trial attorney had "demonstrat[ed] his familiarity with Brown," and "correctly noted that the mandatory time could not be made

22

to run concurrent with the underlying felony." Resp't's Mot. to Dismiss at 11, <u>Freeman v. Clarke</u>, No. CL15-3081, (Va. Cir. Ct. Sept. 28, 2015); Final Order at 11. While <u>Brown</u> did provide that the mandatory time on Freeman's gun charges could not run concurrently with his sentences on the underlying felonies, this hardly demonstrates a correct understanding of its central holding. In fact, the primary focus of the opinion is the Supreme Court's conclusion that trial courts may run multiple mandatory gun sentences under § 18.2-53.1 concurrently with each other. <u>Brown</u>, 733 S.E.2d at 641. Moreover, given the fact that Freeman faced eight mandatory gun sentences, familiarity with this portion of <u>Brown's</u> holding was far more critical to his sentencing argument.

Later, in Respondent's arguments to the state court — also appearing in the court's Final Order — counsel characterized the sentencing outcome, writing that "pursuant to counsel's successful argument, Freeman avoided a lengthy term of incarceration on the underlying felonies" in exchange for the imposition of 38-years' incarceration. Resp't's Mot. to Dismiss at 12; Final Order at 12, <u>Freeman v. Clarke</u>, No. CL15-3081, Richmond Cir. Ct. As this court previously observed, this conclusion is also fundamentally at odds with the trial transcript, which lends no support to Respondent's argument that Freeman's counsel correctly understood <u>Brown</u>, or that he

successfully bargained away the discretion afforded by Brown "in exchange for" a suspended sentence on the underlying felonies. In fact, portions of the trial transcript not mentioned in Respondent's state habeas filings establish that both the prosecutor and defense counsel had prepared guideline calculations using both the abduction and robbery convictions without regard to the mandatory time. Trial Tr. at 155-56. The highest sentence in the Guideline Worksheet – which was initially tendered to the sentencing judge without the consecutive gun sentences – was 28 years and six months for Freeman's underlying robbery conviction. Thus, both counsel and the court knew that both of these guideline calculations revealed ranges substantially below the consecutive § 18.2-53.1 sentences which produced Freeman's 38-year sentence. See Stipulation at 2 (ECF No. 49-2). In addition, the calculation of these alternate guideline ranges already fully accounted for Freeman's criminal history, his multiple convictions, and all his offense conduct. Both lower ranges were explained to the trial judge, however, their relevance was discounted by Freeman's counsel's suggestion that the trial court was "stuck at 38 years." This record is not mentioned in Respondent's brief to the state habeas court, nor in its Final Order denying Freeman's claims. See Austin v. Plumley, 565 F. App'x at 183-84 (citing Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004)

24

(state court's misapprehension of a material factual issue in the record can fatally undermine the fact-finding process and render the resulting decision unreasonable)).  This omission is made more problematic by the fact that the sentencing judge did not rule on the habeas petition.  See Schriro v. Landrigan, 550 U.S. 465, 476 (2007) (post-conviction judge who was also the sentencing judge is "ideally situated" to make habeas findings concerning sentencing error).

In addition to its inconsistency with the trial court record, the state habeas court's conclusion is now flatly contradicted by Freeman's counsel himself.  Respondent nevertheless contends that the state court decision must be upheld so long as any hypothetical, well-informed counsel might reasonably have adopted the same strategy "to avoid ostracizing the trial court by asking for something unreasonable."  Deference under AEDPA to the state court's last reasoned decision does not require this court to defer to hypothetical justifications not articulated by it.  Sellers, 138 S.Ct. at 1193-94; Grueninger, 813 F.3d at 528.  But, even if it did, Respondent's new argument also ignores the extensive on-the-record exchange between counsel and the court demonstrating their mutual understanding that - absent the consecutive gun sentences - the high end of Freeman's guideline range was likely 28 years and six months.  On this record any conclusion that his

counsel's actions were strategic would require an objective belief that, having calculated the guideline range for both underlying felonies – as the record demonstrates he did – Freeman's counsel concluded that neither were sufficiently severe to risk "ostracizing" the court by asking for a sentence at even the high end of either range. And that to avoid such a risk, counsel intentionally failed to mention the discretion afforded by Brown. Such an inference would fall far outside even the "wide latitude" afforded counsel's tactical decisions under Strickland. See Grueninger, 813 F.3d at 529.

Counsel must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. But choices as to strategy made after only limited research "are reasonable [only] to the extent that reasonable professional judgments support the limitations on investigation." Id. Further, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland." Hinton v. Alabama, 134 S. Ct. 1081, 1089 (2014). Certainly, "[t]here is a 'strong presumption' that counsel's

attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" <u>Harrington</u>, 562 U.S. at 109 (quoting <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) (per curiam)). But decisions made in trial based on ignorance of the law "cannot be accorded the same presumption of reasonableness as is accorded most strategic decisions." <u>Dixon v. Snyder</u>, 266 F.3d 693, 703 (7th Cir. 2001).

In this case, viewing the record as a whole, Freeman has rebutted by clear and convincing evidence any suggestion that his counsel understood the arguments available to him and deliberately chose to argue for a 38-year active sentence. <u>See</u> <u>United States v. Carthorne</u>, 878 F.3d 458, 461-62 (4th Cir. 2017) (finding counsel who failed to press argument against career offender enhancement which increased guideline range by nine and a half years was ineffective).

The Supreme Court of Virginia issued its opinion in <u>Brown</u> on November 1, 2012. 733 S.E.2d at 638. This was more than five months before Freeman's sentencing. In <u>Brown</u>, the Supreme Court made clear that, although a sentence for a conviction under Virginia Code § 18.2-53.1 for use of a firearm in the conviction of a felony had to run consecutively with any sentence imposed for the underlying felony, "multiple sentences imposed pursuant to Code § 18.2-53.1 [for use of a firearm in the commission of a felony] may be run concurrently." <u>Id.</u> at

27

640-41.  Thus, at Freeman's sentencing — held months after <u>Brown</u> was decided — the judge had discretion to run all or any number of Freeman's eight mandatory gun sentences concurrently.   None of the other felony charges were subject to mandatory sentences and thus, the trial court was free to impose suspended time on all of the underlying felonies - as it eventually did - and sentence Freeman to a term of imprisonment anywhere in the guideline range for any of his underlying felony convictions. Running even two or three of the eight gun sentences concurrently with each other would have permitted the sentencing judge to fashion a sentence within Freeman's robbery guideline range of 18 to 28 years or the abduction range of 13 to 33 years.   Freeman's trial attorney has candidly stated that he did not fully appreciate the impact of the holding in <u>Brown</u> at the time he made his sentencing argument.   Counsel's Aff. (ECF No. 49-1).   His performance thus fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 687-88.

> **b.   Freeman has demonstrated a reasonable probability that, but for his attorney's inadequate performance, he would have received a shorter sentence.**

Freeman must also demonstrate a reasonable probability that the outcome of his sentencing would have been different if his lawyer had not acted out of a misunderstanding of the <u>Brown</u> decision.  <u>See, e.g.</u>, <u>Strickland</u>, 466 U.S. at 694; <u>Carthorne</u>, 878 F.3d at 469-70.   The state habeas court summarily concluded

28

that Freeman had failed to meet the prejudice prong of
Strickland apparently based on its conclusion that counsel's
"strategic decision" not to advocate for concurrent sentences
was "successful."  Final Order at 12-13, Freeman v. Clarke, No.
CL15-3081.  As demonstrated above, the court's conclusion that
Freeman's counsel was acting strategically was based on a
misapprehension of the trial court record, and resulted in an
unreasonable application of Strickland.  Because the state court
made no other findings regarding Freeman's claims of prejudice,
this court must examine them de novo.  Grueninger, 813 F.3d at
528 (citing Wiggins, 539 U.S. at 534, no AEDPA deference in
evaluating prong of Strickland analysis that state court has not
reached).

   Examining the entire record establishes a reasonable
probability that Freeman would have received a shorter sentence.
First, he received a sentence five years in excess of even the
maximum guideline sentence recommended for his abduction
charges, and ten years longer than the maximum guideline range
for the robbery offense.  This robbery guideline range had been
prepared and tendered to the court by the prosecutor at
sentencing.  While Respondent notes that Virginia's guidelines
are discretionary and not mandatory, there is evidence in both
the trial court record and the supplemental evidence received in

this court that Freeman would probably have received a lower sentence, within one of these two discretionary ranges.

The sentencing judge observed that the eight mandatory sentences running consecutively resulted in a more severe sentence than the court had imposed in past cases for murder. Trial Tr. at 164. The attorneys had calculated the guideline range for both predicate felonies and submitted a worksheet reflecting the lower guideline range of 18 years, two months to 28 years, six months. Trial Tr. at 155. Additionally, the parties have stipulated that the sentencing judge describes himself as a "guidelines judge." Joint Stipulation of Fact at 2 (ECF No. 49-2). Although the judge said he had not previously ordered gun charges to run concurrently, he would have at least considered doing so in Freeman's case if he had been properly informed of the holding in Brown. Id. Additionally, Freeman's trial attorney offered the opinion that, based on his experience practicing in the Richmond Circuit court, and before this trial judge specifically, he likely would have tried to sentence within the guidelines if he had been properly informed of the Brown holding. See Counsel's Aff. (ECF No. 49-1).

Strickland prejudice does not require that Freeman prove to a certainty that he would have received a lower sentence, only a "reasonable probability that but for counsel's errors" the result of the proceeding would have been different. See

30

Carthorne, 878 F.3d at 469-70 (finding Strickland prejudice from attorney error which resulted in guideline range raised by 9.5 years).  In this case, there is a reasonable probability that the trial judge would have imposed a shorter active sentence if he had not been misinformed about the necessity to run all eight gun charge sentences consecutively.  Accordingly, Freeman has demonstrated he was prejudiced by his attorney's error: he has shown a reasonable probability that he received a longer sentence than he would have absent his attorney's mistake.

Of the cases the Respondent has cited in support of its position that Freeman was not prejudiced by his attorney's error, only one case bears any relevant similarity to this case. In United States v. Hopkins, defense counsel asserted incorrectly that the federal court could not impose a sentence of imprisonment to run concurrent with a yet-to-be imposed term of imprisonment in the state court.  568 Fed. App'x 143, 145 (3d Cir. 2014).  Relying on a United States Supreme Court case decided after his sentencing, Hopkins argued that his attorney's argument was incorrect and he should be entitled to a new sentencing hearing. The Third Circuit first found that Hopkins' attorney's performance was not deficient, because the law of the Circuit at the time of Hopkins' sentencing was "unequivocal" and consistent with counsel's argument.  The court went on to hold, in the alternative, that even if the attorney's performance was

31

deficient, the sentencing court still would have likely imposed consecutive sentences for two reasons.  First, the two convictions arose out of separate conduct, i.e. a violent crime and an associated gun charge for the state conviction and an unrelated drug crime for the federal conviction.  <u>Id.</u> at 148. Additionally, the petitioner in <u>Hopkins</u> had an especially poor criminal history — the conviction for the shooting and an escape from a workhouse — which made it unlikely that the federal sentencing judge would have shown the leniency to allow the federal sentence to run concurrent with the state sentence.  <u>Id.</u>

In Freeman's case, the eight gun charges which produced the consecutive sentences all arose from a single event, and there is no evidence that the court would have been more likely to impose consecutive sentences because of his criminal history, which was fully accounted for in the other guideline ranges which were calculated prior to sentencing.  Thus, the facts that the <u>Hopkins</u> court used to find a lack of prejudice are not present in Freeman's case.  Moreover, the holding in <u>Hopkins</u> is arguably dicta as it followed the court's definitive conclusion that his trial counsel had not erred in failing to predict the later Supreme Court case which modified controlling precedent in the circuit.

Freeman has not argued that he was constitutionally entitled to have his mandatory gun sentences run consecutively.

He was not. But the Sixth Amendment did guarantee that his counsel would be prepared to argue, within the bounds of existing precedent, for the best possible sentencing outcome. His counsel had an "overarching duty to advocate the defendant's cause . . . [and] bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Strickland, 466 U.S. at 688. Instead, he made decisions based on a serious misunderstanding of the controlling law. As a result, in this instance his performance cannot be considered constitutionally adequate assistance of counsel. See Tice v. Johnson, 647 F.3d 87, 106 (4th Cir. 2011) (citations omitted) (even an isolated error in otherwise competent representation can support a claim of ineffectiveness if it is sufficiently egregious and prejudicial). Counsel's error frustrated the adversarial process in precisely the manner the Supreme Court sought to remedy in Kimmelman. See 477 U.S. at 374; accord Jones v. Clarke, 783 F.3d 987, 993 (4th Cir. 2015) (Gregory, J., dissenting) ("[A] functioning adversarial system requires actual adversaries."). In short, it prevented the adversarial testing for which a trial exists as counsel on both sides united to advocate an incorrect interpretation of the law, which led the court to conclude it lacked any discretion to impose a sentence less than 38 years. Accordingly, the undersigned recommends the court find that Freeman has established that he was denied

effective assistance of counsel, and is entitled to a new sentencing hearing.

### III.   RECOMMENDATION

When a habeas petitioner establishes a right to relief, the court must "dispose of the matter as law and justice require." Austin v. Plumley, 565 F. App'x at 192 (quoting 28 U.S.C. § 2243). When, as in this case, the error is curable by resentencing alone, the appropriate remedy is usually the grant of a conditional writ conditioned on resentencing in a specific period of time. Id. "District courts rightly favor conditional grants, which provide states with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns." Gentry v. Deuth, 456 F.3d 687, 692 (6th Cir. 2006); accord Belmar v. Clarke, No. 3:16cv455, 2016 WL 1568680, at *11 (E.D. Va. Mar. 30, 2018).

Based on the foregoing recommended findings, this report recommends the court GRANT the writ unless the Commonwealth of Virginia promptly resentences Freeman for the crimes for which he was convicted. Specifically, the undersigned RECOMMENDS that the writ be conditioned on the following:

Within 90 days of this court issuing the conditional grant, the Richmond Circuit Court would resentence Freeman in accordance with Virginia law.

If the Commonwealth fails to comply with the directions set forth above, the writ of habeas corpus would issue and Petitioner would be immediately released from custody.

## IV.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

(1) Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of this order's entry, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

(2) A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir.1984); United States v. Schronce, 727 F.2d 91 (4th Cir.1984).

The Clerk is directed to provide electronic copies of this Report and Recommendation to counsel of record for Freeman and the Respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

July 13, 2018